*14*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

NOV 2 9 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| vs | § | CIV. NO. B-00-147 |
| | § | |
| CERTAIN REAL PROPERTY KNOWN | § | |
| AS 5587 MYSTIC BEND | § | |
| Defendant. | § | |

**GOVERNMENT'S MOTION FOR JUDGMENT ON THE PLEADINGS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The United States of America, through Mervyn M. Mosbacker, United States Attorney,

and Ronald G. Morgan, Assistant United States Attorney, pursuant to Federal Rules of Civil

Procedure (Fed. R. Civ. P.) 12(c) and 56, files this motion for judgment on the pleadings or, in

the alternative, for summary judgment against the Defendant Property stating as follows:

**STATEMENT OF THE ISSUES**

Whether, Pursuant to Federal Rules of Civil Procedure 12(c) and 56, the
Government is Entitled to Judgment upon the Pleadings or, in the Alternative, to
Summary Judgment that the Defendant Property is forfeitable to the United States.

**SUMMARY OF THE ARGUMENT**

Defendant Property was purchased with proceeds from the illegal sale of drugs
and is therefore forfeitable to the United States Government. Claimant does not
qualify as an innocent owner because she is not a bona fide purchaser for value and
was otherwise aware of the forfeitable nature of the Defendant Property as property
purchased with illegal proceeds. Therefore, claimant's interest in the Defendant
Property, as was her spouse's, is forfeitable to the United States.

**FACTS**

The complaint in this case seeks forfeiture of a residence and the land upon which it sits

located at 5587 MYSTIC BEND, BROWNSVILLE, CAMERON COUNTY, TEXAS. The legal

CMPDF - www.fenlio.com

description of the property is recorded as:

> (a) Lot 20, Block 7, The Woods Subdivision, Cameron County, Texas,
> according to the map thereof recorded in Cabinet 1, Slot 1428-A & 1428-B,
> Map Records of Cameron County, Texas, along with all improvements.

(hereinafter "Defendant Property").

The forfeiture action in this case is brought pursuant to 18 U.S.C. §§ 983 and 985 to enforce the provisions of 21 U.S.C. § 881(a)(6), which provide for the forfeiture of property which is purchased/improved with narcotic trafficking proceeds in violation of Title II of the Controlled Substance Act, 21 U.S.C. § 801 et seq. The facts underlying this action are established by, among other things, the sworn testimony of one of the owners of the property, who admitted that the property was acquired using proceeds from transactions involving controlled substances. That testimony is recorded in the transcript from the owner's plea inquiry, pursuant to Federal Rule of Criminal Procedure 11, and the documents entered into by the owner as part of his plea agreement.

The facts of this case reveal that the Defendant Property is owned by Ricardo Eloy Garcia (Mr. Garcia) and his wife, Eva Garcia (Mrs. Garcia), and was acquired by them in August 1998. Government Appendix ("GA") 1.[1]  By the time of the purchase, Mr. Garcia had been involved in transactions relating to controlled substances for three years. GA 3. During this period, and continuing until October 1999, Mrs. Garcia was not employed outside of the home. GA 20 (para 12). The improvements to the Defendant Property were completed in February, 1999, at which time a mortgage was taken out on Defendant Property. GA 5-13. International Bank of Commerce ("IBC"), P.O. Box 579, McAllen, Texas 78505, holds the mortgage on the property, which was

---

[1]"GA at _____" refers to the page in the Government's Appendix, which is attached to this motion.

2

obtained by the Garcia's to finance the construction loan that was obtained to build the residence on the lot. Id.

On May 25, 1999, the Federal Bureau of Investigation (FBI) initiated an investigation against Mr. Garcia for the transportation and distribution of controlled substances. GA 16 (para 7). The investigation was initiated following Mr. Garcia's meeting with a confidential informant in which Mr. Garcia agreed to deliver approximately 2,175 pounds of marihuana on behalf of a drug organization with whom Mr. Garcia had extensive ties. GA 16 (para 10).

In November 1999, during the course of its investigation, the Government learned that, on at least one occasion, Mr. Garcia used Mrs. Garcia to report on the location of police surveillance vehicles. GA 19a (para 11). On that occasion, Mr. Garcia informed his wife that he was being followed by the police and described the vehicle. In response to a series of questions regarding the alleged surveillance vehicle and a description of its occupants, Mrs. Garcia informed her husband as to the location of the vehicles and when they had departed the area. Id.

On June 8, 2000, Mr. Garcia was arrested at his residence, the Defendant Property, by the FBI for the transportation and distribution of controlled substances. GA 17 (para 8). At the time of his arrest, Mr. Garcia gave an extensive statement to the FBI. In that statement he identified some of his prior drug transactions and for whom those transactions were carried out. GA 17 (para 8). In general, Mr. Garcia identified himself as the "middle man" for a drug organization in Matamoros, Tamaulipas, Mexico. Id. The organization was involved in the distribution of controlled substances originating in Mexico and ending in Houston, Texas. Id. According to Mr. Garcia, depending upon the amount of marihuana he transported he would be paid between $5,000 and $10,000. Id. According to Mr. Garcia's statement, at one time in 1998 he received $38,000 for transporting approximately 2,000 pounds of marihuana to Houston, Texas. GA 18 (para 9).

3

According to Mr. Garcia, in late 1998, he was taken and held prisoner by the drug organization for which he worked and accused of being an informant for the United States Government. GA 18 (para 9). Mr. Garcia stated that he called Mrs. Garcia and explained to her that he was being held and tortured for mishandling one of the drug shipments. Id. Mr. Garcia stated that he had requested that Mrs. Garcia help him by releasing a pickup truck owned by the Garcia's as payment for his release. Id. In accordance with the directions given by Mrs. Garcia to an acquaintance of Mr. Garcia, the pickup truck was driven to Matamoros, Mexico, and released to the drug organization. Id. This transfer of the vehicle was intended by Mr. Garcia to cover the cost of the mishandled shipment of drugs. Id.

During his interview, Mr. Garcia was asked about other businesses in which he had an interest. Mr. Garcia identified two businesses: a tire repair shop and a taco stand. GA 20 (para 12). According to Mr. Garcia, the tire repair business made barely enough to cover the expenses of the businesses and to pay the salaries of the employees. Id. The taco stand was opened in the fall of 1999 and cleared approximately $800 to $1000 per month. Id. According to the tax returns filed by Mr. and Mrs. Garcia, their adjusted gross income for 1995 was $10,525; for 1996 it was $9,373; for 1997 it was $4,436 and for 1998 it was $12,060. GA 23-57.[2]

According to Mr. Garcia, prior to the opening of the taco stand in the fall of 1999, Mrs. Garcia had not worked outside of the home. Id. In other words, based upon the statements of her husband, and from what appears in their tax returns, Mrs. Garcia had no independent source of

_____

[2]On September 22, 2000, this Court, by Federal District Court Judge Filemon Vela, issued an order pursuant to 26 U.S.C. § 6103(i), permitting the use of tax returns and tax payer information for the subject years for Ricardo Eloy Garcia and Eva Garcia. Out of an abundance of caution, however, those records are attached hereto in a sealed envelope to insure minimal dissemination of the tax information and returns.

income before late 1999.

On July 24, 2000, Mr. Garcia entered a plea of guilty to possessing with the intent to distribute in excess of 2,100 pounds of marihuana. GA 63.[3] During the inquiry into the factual basis of the plea, Mr. Garcia admitted under oath, in open court, that he "had been involved in numerous narcotics trafficking deals dating back to ... 1995...." Mr. Garcia further admitted that the Defendant Property was purchased with proceeds derived from the transportation and distribution of controlled substances. GA 69-70.

Pursuant to an agreement between the Government and Mr. Garcia, Mr. Garcia entered into and agreed to the entry of an Agreed Order of Criminal Forfeiture relating to his interest in the Defendant Property. GA 74-76. As part of that order, Mr. Garcia reiterated that "the [Defendant] [P]roperty was purchased with the proceeds of transactions involving controlled substances in violation of Title 21, United States Code." Id. On the same date that Mr. Garcia entered the plea of guilty and conceded forfeiture of his interest in the Defendant Property, the court entered the agreed order of forfeiture. GA 76. Moreover, on October 30, 2000, as part of the judgment in Mr. Garcia's criminal case, the court entered a final order of forfeiture, forfeiting Mr. Garcia's interest in Defendant Property to the Government and authorized the Attorney General of the United States, or her designee, to seize Mr. Garcia's interest in the property. GA 77-78.

As part of the final order of forfeiture, the court determined that no ancillary proceeding was necessary. The court's ruling was based upon the fact that the interests of any other person or entity would be resolved in this civil forfeiture proceeding. The only parties with an interest in the

---

[3]Rather than burdening the record with the entire transcript, only the transcript pages relating to the issues before the Court are attached. A complete copy of the transcript is available and can be submitted to the Court for its consideration if the Court so requires.

5

Defendant Property are Mrs. Garcia and International Bank of Commerce ("IBC"), P.O. Box 579,

McAllen, Texas 78505, which holds a mortgage on the property (which was obtained by the

Garcia's to finance the construction loan that was obtained to build the residence on the lot).

On October 10, 2000, IBC filed a "Claim of Lienholder" and an "answer" in this matter.

GA 79-93. Also on October 10, 2000, Mrs. Garcia filed an "Appearance and Claim to the Res."

GA 104-06. Publication of the notice to file claims and of the Government's intent to forfeit the

Defendant Property was completed on October 22, 2000. GA 107-09. The statutory period in

which claims could be filed expired November 21, 2000. No other claims relating to the

Defendant Property have been filed. Thus, the only claims to Defendant Property are those of

Mrs. Garcia and IBC Bank. The Government will concede the claim of IBC and its status as a

secured creditor in this matter.[4]  With this stipulation, the only claim against the Defendant

Property and the only interest to resolve with respect to the Defendant Property is that of Mrs.

Garcia, which can be resolved based upon the facts and evidence currently available to the court.

## APPLICABLE LAW

### A. Summary Judgment Standard

In deciding a general motion for summary judgment, the Court must determine whether

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F. 3d 1069, 1075 (5th Cir. 1994) (en

banc). The facts are to be reviewed with all inferences drawn in favor of the party opposing the

---

[4]The amount of IBC's claim will be determined at the time the sale of the Defendant
Property is executed.

6

motion. <u>Boze v. Branstetter</u>, 912 F. 2d 801, 804 (5th Cir. 1990) (citing <u>Reid v. State Farm Mut.</u>

<u>Auto Ins. Co.</u>, 784 F. 2d 577, 578 (5th Cir. 1986).  However, factual controversies are resolved in

favor of the non-movant "only when there is an actual controversy, that is, when both parties

have submitted <u>evidence</u> of contradictory facts." <u>McCallum Highlands, Ltd. v. Washington</u>

<u>Capital Dus, Inc.</u>, 66 F. 3d 89, 92 (5th Cir.)(emphasis added), <u>revised on other grounds upon</u>

<u>denial of reh'g</u>, 70 F. 3d 26 (5th Cir. 1995).

    The party moving for summary judgment has the initial burden of demonstrating the

absence of a material fact issue with respect to those issues on which the movant bears the

burden of proof at trial.  For any matter on which the non-movant carries the burden of proof at

trial, however, the movant may, by merely pointing to the absence of evidence supporting the

essential elements of the non-movant's case, shift to the non-movant the burden of demon-

strating by competent summary judgment proof that there is an issue of material fact so as to

warrant a trial.  <u>Transamerica Ins. Co. v. Avenell</u>, 66 F. 3d 715, 718-19 (5th Cir. 1995); <u>Forsyth</u>

<u>v. Barr</u>, 19 F. 3d 1527, 1533 (5th Cir.), <u>cert.</u> <u>denied</u>, 115 S. Ct. 194 (1994).  The non-movant's

burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical

doubts as to the facts, or a scintilla of evidence.  <u>Douglass v. United States Auto. Ass'n</u>, 65 F. 3d

452, 459 (5th Cir. 1995), <u>aff'd.</u>, 79 F. 3d 1415 (5th Cir. 1996) (en banc); <u>Little</u>, 37 F. 3d at 1075.

    These same standards are applied where summary judgment is sought in an asset

forfeiture. <u>United States v. Two Parcels in Russell County</u>, 92 F.3d 1123 (11th Cir. 1996) (the

mere allegation of a highly unlikely legitimate source of income without some support to give the

allegation credibility cannot constitute an issue of material fact defeating summary judgment);

<u>United States v. $86,020.00 in U.S. Currency</u>, 1 F. Supp. 2d 1034, 1040-41 (D. Ariz. 1997)

(court may enter summary judgment for the Government even if the claimant offers evidence of a legitimate source for seized currency, if the explanation is so implausible that no reasonable jury could find for the claimant); United States v. Real Property at 40 Clark Road, 52 F. Supp. 2d 254 (D. Mass. 1999) (same) (claimant must offer something more than evidence of some legitimate income to create material issue of fact).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  McCallum Highlands, 66 F. 3d at 92; Little, 37 F. 3d at 1075 (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

Finally, Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  Little, 37 F. 3d at 1075 (citing Celotex, 477 U.S. at 322).  In this case, the claimant must establish that she was a bona fide purchaser for value, which, as discussed more fully below, will necessitate that she prove the existence of a legitimate source for the funds used to purchase the Defendant Property.  The claimant must also prove that she was unaware and had no reason to know that the Defendant Property was otherwise subject to forfeiture.

## B.  Innocent Owner Standard

Effective August 23, 2000, as part of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. 106-185, 114 Stat. 202 (2000), Congress established a uniform innocent owner defense.[5]  That defense, which is codified at 18 U.S.C. § 983(d), provides that "[a]n

---

[5]CAFRA applies to "any forfeiture proceeding commenced on or after" August 23, 2000. The legislative history of CAFRA indicates that a forfeiture proceeding is commenced, for purposes of the act, on "the date upon which the first administrative notice of forfeiture relating to the property is sent."  In the instant case, because administrative forfeiture is not permitted for real property, 18 U.S.C. § 985, and no such notice was filed,  the forfeiture action is commenced

innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1).  The statute defines what constitutes an innocent owner and distinguishes between the interests of purported innocent owners whose interest were acquired before, 983(d)(2), and those acquired after, 983(d)(3), the offense which gives rise to the forfeiture.

Pursuant to 18 U.S.C. § 983(d)(2) a pre-illegal act transferee innocent owner is a person who did not know of the conduct giving rise to the forfeiture or who, upon learning of the conduct giving rise to forfeiture, did all that was reasonably possible to terminate such use of the property.  As for those individuals claiming to have acquired an interest in the property to be forfeited after the act giving rise to forfeiture has occurred, the standard is different.

Pursuant to 18 U.S.C. § 983(d)(3), a post-illegal act transferee innocent owner claimant must establish that, at the time the interest in the property is acquired, he or she was a bona fide purchaser or seller for value and that the claimant was reasonably without cause to believe that the property was subject to forfeiture.  In those situations where the property to be forfeited is a primary residence, the statute provides a qualified exception to the requirement that the purported innocent owner must be a bona fide purchaser or seller.  18 U.S.C. § 983(d)(3)(B).  As relevant between spouses, the bona fide purchaser requirement has been deleted, but only in those cases where the property is not traceable to proceeds of any criminal offense.  18 U.S.C. § 983 (d) (3)(B)(iii).  In other words, where the property was purchased with or improvements were made using proceeds traceable to or derived from a criminal act, the purported innocent owner spouse can prevail as such only if he/she qualifies as an innocent owner under § 983(d)(3)(A), which requires that the spouse be a bona fide purchaser.

---

upon filing the civil complaint.

9

CMsPDF - www.fesina.com

## ARGUMENT

### A.    The Defendant Property Is Subject To Forfeiture

As Mr. Garcia repeatedly stated and as the facts otherwise establish, the Defendant Property was purchased in August of 1998 with the proceeds of transactions involving controlled substances.  Furthermore, as this Court informed Mr. Garcia during the Rule 11 colloquy, the drug offense to which he pled guilty carries a term of imprisonment in excess of one year.  These facts render the property forfeitable. 21 U.S.C. § 853(a)(1).  Mr. Garcia is bound to his prior statements and is precluded from now changing his sworn testimony in an effort to defeat summary judgment in this case.  United States v. Contents of Account Numbers 208-06070, 847 F. Supp. 329 (S.D.N.Y. 1994) (claimant cannot create a material issue by contradicting sworn statements made in his earlier guilty plea).  Thus, Mr. Garcia cannot now be heard to complain that the property was not purchased with drug proceeds.

In addition to Mr. Garcia's repeated representations regarding the source of the funds to purchase the Defendant Property, the other available evidence supports this fact.  The most telling of this evidence is his reported income, evidently from legitimate sources, which was clearly insufficient to purchase the Defendant Property.  See,  21 U.S.C. § 853(d)(rebuttable presumption arises following a conviction under Title 21 that unexplained income is proceeds of drug transaction and, therefore, it and property purchased with it are forfeitable).   Clearly, the evidence, by at least a preponderance if not more, establishes that the Defendant Property was purchased with proceeds of drug activity and is, therefore, subject to forfeiture to the United States.

**B.   Mrs. Garcia's Interest In The Defendant Property Is Subject To Forfeiture**

Mrs. Garcia's interest, if any, in the Defendant Property is a community property interest attributable to the laws of Texas and the fact that the property was purchased during the existence of the marriage.  The fact that Mrs. Garcia's interest in the Defendant Property is due solely to its nature as marital property is evident in her lack of an independent source of income at the time the Defendant Property was purchased.  This fact is seen both in the statements of Mr. Garcia and in the tax returns filed by the Garcias.  Furthermore, to the extent Mrs. Garcia has any legitimate interest in the Defendant Property, it arose at the time of its purchase, which occurred after the drug transaction that produced the proceeds used to purchase the Defendant Property.  Thus, there is no legitimate material issue of fact as to whether the Defendant Property was purchased with proceeds from transactions relations relating to controlled substances, Mr. Garcia has already admitted that fact under oath.

Instead, the question vis-a-vis Mrs. Garcia is whether she is an innocent owner.  If she does not qualify for such status, which she does not, then the Defendant Property is forfeitable to the United States.  Because any purported interest in the Defendant property arose after the controlled substance transactions, which produced the proceeds used to purchase the property, any status that Mrs. Garcia might assert as an innocent owner is governed by 18 U.S.C. § 983(d)(3).

As set forth above, in order to claim status as an innocent owner for property which is acquired after the criminal act which renders it forfeitable, the claimant must be a bona fide purchaser for value who did not know and was reasonably without cause to believe that the property was subject to forfeiture.  As the language of the section 983(d)(3)(A) expressly

11

provides through its use of the conjunctive "and," both attributes must be present before an individual can claim the status of innocent owner and thereby avoid forfeiture.   Under the facts of this case, Mrs. Garcia can satisfy neither criterion.

### 1.   Mrs. Garcia Is Not A Bona Fide Purchaser For Value

In order to qualify as a bona fide purchaser for value, the claimant must give something of value in exchange for the property acquired and the interest claimed.  H.R. Rep. 105-358, 105th Cong., 1st Sess., 1997 WL 677201 (1997).  Common sense dictates that in order for the item to be of value or properly transferred in exchange for the property, the transferor must have a cognizable interest in that which is given in exchange for the property.   As explained below, because the funds used to purchase the Defendant Property were proceeds of criminal activity, they never became community property, which means that Mrs. Garcia never gave anything of value for the property. This fact, by itself, defeats Mrs. Garcia's claim.

In this case, even assuming that Mrs. Garcia was entitled to one-half of Mr. Garcia's interest in the proceeds from the controlled substance transactions, she still had nothing nor could she give anything of value in exchange for the property.  This fact follows from the law's insistence that one never obtains title to ill-gotten gains.  Smith v. United States, 76 F.3d 879 (7th Cir. 1996).  Accord, United States v. Salinas, 65 F.3d 551, 554 (6th Cir. 1995)("one never acquires a property right to proceeds"). In other words, Mrs. Garcia was entitled to one-half of nothing.

The United States Court of Appeals for the Fifth Circuit has considered what is owned by one who possesses criminal proceeds and uses those proceeds to purchase property. Where the Government forfeits criminal proceeds or items acquired with such proceeds, the court has

12

determined that the individual from whom the property was forfeited lost nothing to which he or she was otherwise entitled.  In such situations

> "the forfeiture of illegal proceeds, much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme."  We find nothing which renders this reasoning inapplicable to the forfeiture of property purchased with proceeds admittedly obtained through [some other type of criminal activity].

United States v. Schinnell, 80 F.3d 1064, 1069 (5th Cir. 1996)(quoting United States v. Tilley, 18 F.3d 295, 300 (5th Cir. 1994).  Therefore, in the case of criminal proceeds or property acquired with such proceeds, the criminal has "nothing to which the law ever entitled him."  Tilley, 18 F.3d at 300.  It then follows that the criminal has "no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their genesis in illegal activity."  Id. (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, ____, 112 S.Ct. 2886, 2894 (1992)).

Most recently the Fifth Circuit further explained this result by pointing out that where the property was acquired using proceeds from criminal activities, the "'relation back doctrine' operates to vest title in the Government to the [illegal] proceeds . . . as of the time [that Mr. Garcia] engaged in those illegal activities, [therefore] these proceeds, and any property purchased with the proceeds, never became community property."  United States v. Martinez, Dkt No. 99-20321, 2000 WL 1370794, slip Op. at *3  (5th Cir., September 22, 2000).[6]

Thus, it is clear that Mr. Garcia, despite his possession of the proceeds of the drug transactions, never held title or ownership to the proceeds and, in fact, had no legally recognized

---

[6]Because the opinion is not yet published, a copy is attached at GA 94-97 for the Court's convenience.

13

interest in the proceeds.  From this it is becomes obvious that if Mr. Garcia, from whom Mrs.

Garcia derived her interest in the proceeds used to purchase the property, had no legal interest in

the criminal proceeds, then neither did Mrs. Garcia.  See Lee v. Lee, 112 Tex. 392, 247 S.W. 828

(1923)(as to community property wife obtains "no higher or better title" than does husband).

        The result of this lack of any cognizable interest in the proceeds of drug transactions is

that Mrs. Garcia, as a matter of law, could not have given something of value in exchange for the

Defendant Property.  The absence of any legal interest in the proceeds that were exchanged for

Defendant Property and Mrs. Garcia's subsequent failure to exchange something of value for the

Defendant Property prevents Mrs. Garcia from qualifying as a bona fide purchaser of value under

the statute.[7]

        In her responses to the Government's first set of interrogatories, Claimant alleges, that

the Defendant Property was purchased using funds that were given to Claimant by Mr. Garcia's

mother.  GA 98-99.  This assertion is nothing more than an unsubstantiated allegation, which

courts have repeatedly rejected as a basis for a material issue of fact supporting a denial of a

motion for summary judgment.  See, e.g., United States v. Two Parcels in Russell County, 92

F.3d 1123;  United States v. $86,020.00 in U.S. Currency, 1 F. Supp. 2d at 1040-41;  United

States v. Real Property at 40 Clark Road, 52 F. Supp. 2d 254 (D. Mass. 1999).

        The lack of substance in Mrs. Garcia's assertion is seen in what Mrs. Garcia points to as

support for the gift.  As mentioned above, Mrs. Garcia asserts that the Defendant Property was

purchased with gifted funds from her mother-in-law, Ildefonsa de la Llata de Garcia.  As

---

        [7]Because the Defendant Property was purchased using **proceeds** from criminal activity,
the exception to the bona fide purchaser requirement provided by 18 U.S.C. § 983(d)(3)(B) does
not apply.

apparent support for this claim, Mrs Garcia attaches two purchase contracts for property in Matamoros, Mexico.  On their face, these documents are irrelevant and do not relate to any purchase or sale of property by or on behalf of Ildefonsa de la Llata de Garcia.  Instead, the documents show that a Miss Maria Luisa Garza Olguin, a single woman, bought three lots in 1987. GA 117.  The other document that reflects that a Doctor Eliud Rogelio Cavazos Gonzalez bought two lots, also in 1987.  At no point, in no terms or by any reasonable implication, is Mrs. Garcia's mother-in-law mentioned in any of these documents.

Moreover, even assuming for purposes of argument, that these documents in some way relate to a transaction involving Mrs. Garcia's mother-in-law, at most what they show is that property may have been bought in Mexico in 1987.  Most tellingly, what the evidence does not show is that after 11 years Mrs. Garcia's mother-in-law still had the funds that may have been generated during such a sale or, more importantly, that the proceeds from that sale were turned over to Claimant.   In other words, the only indication that the Defendant property was purchased with other than the drug proceeds are the unsupported assertions of Mrs. Garcia, which are contravened by the sworn testimony of Mr. Garcia, whose mother allegedly gave Claimant the gift money with which to purchase the Defendant Property.

A similar argument would apply to any claim by Mrs. Garcia's that an alleged 1998 sale of her interest in a taxi business in Mexico City may have been used to fund the purchase of the Defendant Property.  GA 100.  In her answers, Mrs. Garcia does not allege that the Defendant Property was purchased with such funds, but if she were to raise such an argument at some point, it would also have to fail because of lack of support.

As clearly demonstrated earlier, unsupported claims are not and cannot be accepted by

15

Courts to create issues out of mere allegations in an effort to avoid summary judgment. Mrs. Garcia's assertions that the Defendant Property was purchased with funds from Mexico are without support. Thus, the only basis upon which to find that Mrs. Garcia purchased the Defendant Property with other than drug proceeds acquired by her husband are the bare unsupported allegations of Mrs. Garcia, which, as a matter of law are insufficient to defeat summary judgment. The result of the foregoing is that in terms of the nature of the funds used to purchase the Defendant Property, Mrs. Garcia does not qualify as an "innocent owner."

2.   **Mrs. Garcia Was Aware of the Nature Of The Funds Used To Purchase the Defendant Property and Therefore Its Forfeitability**

Even assuming, solely for purposes of argument, that Mrs. Garcia could somehow qualify as a bona fide purchaser for value, she still cannot qualify as an innocent owner in this case. This fact is the result of her knowledge as to the source of the funds used to purchase the property. As a result of this knowledge, she was aware or reasonably should have been aware that the property purchased using those proceeds was subject to forfeiture, which also precludes her innocent ownership claim.

According to Mr. Garcia, in 1998 he was taken hostage by the narcotics organization for whom he distributed drugs. GA 18 (para 9). Mr. Garcia stated that the organization alleged that he mishandled a drug shipment and was concerned that he might be an informant for the United States Government. Id. Evidently, Mr. Garcia was able to convince the organization that he was not an informant, but he nevertheless was held responsible for mishandling the drug shipment. According to Mr. Garcia, he contacted his wife and informed her where he was, why he was there, and that she, Mrs. Garcia, should turn over one of Mr. Garcia's vehicles as payment for the

16

mishandling of the drug shipment and to secure his release. Clearly, Mrs. Garcia was aware, after being told that her husband was being held and tortured for mishandling a drug shipment, of the nature of her husband's criminal activities.

This fact takes on added significance when coupled with the Garcias' reported income and the timing of their purchase of the lot. According to their tax returns for the period 1995-1998, the Garcias' average salary for all four years was approximately $9,100. GA 23-57. Despite this fact, and in a year in which they claimed income of only $12,060.00, the Garcias paid $25,000 using check number 101, which appears to be the first check drawn on a new account to purchase the lot, which comprises a portion of the Defendant Property. GA 103.

Given the timing of the purchase and the available legitimate funds, as well as the other facts of this case, the only reasonable and substantiated explanation for the money used to purchase the lot and to make payments upon the house after its construction is drug proceeds. This explanation holds true despite Mrs. Garcia's unsupported allegations that the property was purchased with a gift. Mrs. Garcia lived in the residence and signed the tax returns and as a matter of common sense and experience must have known that there was a considerable amount of unexplained money, the only explanation for which was drug proceeds.

This fact is made even more obvious in view of the Garcia family's expenses. While the Government requested claimant's approximation of her family's monthly expenses during the last five years, claimant failed to provide that information and instead merely answered that claimant's monthly expenses are $2,149.00. GA 101. Even subtracting the cost of the mortgage on the Defendant Property, $972.00, it appears that Claimant's expenses substantially exceed her income. Surely, absent willful blindness by Mrs. Garcia, no other conclusion can be reasonably drawn

17

from these facts except that she was or reasonably should have been aware that the property in question was purchased with illegal proceeds and therefore was subject to forfeiture. Cf. United States v. Moffitt, Zwerling & Kemler, 83 F.3d 660 (4th Cir. 1996)(law firm had reason to know that fee it received was subject to forfeiture where it was aware of activities of client). See also United States v. Reissig, 186 F.3d 617, 619 (5th Cir. 1999)(knowledge can be inferred if individual deliberately blinded himself/herself to the existence of a fact).

Not only should Mrs. Garcia have been aware of the "unexplained income," she clearly should have been aware of the source of that income. This knowledge was provided in 1998 by Mr. Garcia when he enlisted Mrs. Garcia's help in securing Mr. Garcia's release from his kid-nappers. GA 18 (para9). The source of the unexplained income must have been re-emphasized again in 1999 when Mr. Garcia enlisted Mrs. Garcia's help regarding the police surveillance. GA 19a (para 11).

The "innocent owner" defense against forfeiture of property is intended to protect those individuals who are actually innocent of wrong doing, played no role in any of the illegal conduct giving rise to the forfeiture, and in fact were unaware of the wrong doing. Mrs. Garcia can claim none of these attributes, for which reason she is not entitled to claim the status of an innocent owner. Because she is not an innocent owner and because the property was purchased with proceeds from transactions involving controlled substances, the property is subject to forfeiture and should be ordered forfeit to the United States.

## CONCLUSION

Based upon the facts in this case and the applicable law and because there is no reasonable dispute as to any material fact, the United States is entitled to judgment upon the

18

pleadings or, in the alternative, summary judgment and would respectfully request the Court to

rule accordingly.

Respectfully submitted,

MERVYN M. MOSBACKER
United States Attorney

By: _____
RONALD G. MORGAN
Assistant U. S. Attorney
Federal Bar No. 23902
TX Bar No. 00795014
600 East Harrison, # 201
Brownsville, Texas 78520
Tel No.  (956) 548-2554
Fax No. (956) 548-2711

19