

17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 8 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. B-00-147 |
| | ) | |
| CERTAIN REAL PROPERTY KNOWN | ) | |
| AS 5587 MYSTIC BEND | ) | |

**CLAIMANT'S RESPONSE TO GOVERNMENT'S MOTION
FOR JUDGMENT ON THE PLEADINGS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Eva Garcia, Claimant in the above-styled and numbered cause, and files

this her response and opposition to the Government's Motion for Judgment on the Pleadings or,

in the alternative, for Summary Judgment heretofore filed by the Government.  By way of

response this Claimant would respectfully show unto the Court as follows:

I.

This Response is intended to respond on the basis of Eva Garcia, individually.  Her

husband, Ricardo Eloy Garcia, had previously entered into an Agreed Order of Criminal

Forfeiture relating to his interest in the Defendant Property.  Although the Government cites that

Ricardo Eloy Garcia admitted that "the Defendant Property was purchased with the proceeds of

a transaction involving controlled substances," Claimant disputes such allegation and respectfully

suggests that the actions of the Government in conditioning a plea bargain upon the acceptance

of an Agreed Order of Criminal Forfeiture, often leads to admissions made by the criminal

defendant which are not based on fact, but rather, with the intent of receiving a lower/reduced sentence.

Claimant has stated in her answers to interrogatories that the money utilized to purchase the Defendant Property came in the form of a gift made by Ildefonsa de la Llata de Garcia, the mother of Ricardo Eloy Garcia. A true and correct copy of the Affidavit of Ildefonsa de la Llata de Garcia is attached hereto as EXHIBIT A and incorporated herein for all purposes. The Affidavit clearly reflects that the Affiant purchased the four lots in 1987 or 1988. The lots were sold in 1998, and the money resulting from the lots (approximately $80,000.00) was given to Ricardo Eloy Garcia and wife, Eva Garcia, as a gift in order to assist them in buying a lot and building a house.

A true and correct copy of the Affidavit of Claimant, Eva Garcia, is attached hereto as EXHIBIT B and incorporated herein for all purposes. The Affidavit of Claimant reflects that she and her husband received $80,000.00 in March 1998 from her mother-in-law and that such money was deposited into Banco Inverlat, S.A. in Matamoros, Tamaulipas, Mexico. The Affidavit further reflects that monies were then transferred to the account of Ricardo Eloy Garcia and Claimant in International Bank of Commerce in Brownsville, Texas, and that from such account, the monies were utilized to purchase the Defendant Property lot and to subsequently made the down payment for the construction of the house. The balance of the purchase price of the house was financed through International Bank of Commerce.

Claimant makes no claim that she earned the money during her working life or that the money utilized to purchase the Defendant Property arose from the sale of her interest in a taxi business. Simply stated, Claimant's mother-in-law purchased property in Mexico in 1987, such

property was sold in 1998, and the proceeds resulting from the sale were given to Ricardo Eloy Garcia and Eva Garcia as a gift.

## II.

The knowledge of Mrs. Garcia as to the criminal involvement of her husband is immaterial if the proceeds utilized to purchase the property and the house were not generated from his criminal activity as alleged by the Government. The Government bases its case on the admission made by Ricardo Eloy Garcia that the purchase money was generated from his involvement in the smuggling scheme which he conducted in the Houston area as alleged by the Government. However, this admission is contradicted by his wife, and by the documentary evidence which indicates that, in fact, the monies used to purchase the subject property came from Claimant's mother-in-law. The lots which the mother-in-law purchased were acquired in 1988 - ten years before the Defendant Ricardo Eloy Garcia was caught in the smuggling operation. The Government alleges that Ricardo Eloy Garcia began this smuggling operation in approximately 1995 (see Government's motion, page 5, GA 67-70), and that it was from this operation that the illegal funds were generated.

The evidence is clear that the $85,000.00 deposited into the Banco Inverlat account owned by Claimant and her husband came from the monies earned by Claimant's mother-in-law. It would seem, therefore, that a factual dispute exists as to which person is more credible - Ricardo Eloy Garcia, or his mother and Claimant, his wife, together with the documentary evidence supporting their contentions. Claimant would therefore request that the motion for summary judgment and judgment on the pleadings filed by Plaintiff be denied.

Respectfully submitted,

By: _____

Dennis Sanchez
State Bar No. 17569600

Federal Bar No. 1594

SANCHEZ, WHITTINGTON, JANIS
    & ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521-2284
(956) 546-3731 - Telephone
(956) 546-3765 or 3766 - Fax
ATTORNEYS FOR Claimant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Claimant's Response to Government's Motion for Judgment on the Pleadings and Motion for Summary** Judgment has been served upon counsel for the Plaintiff, Mr. Ronald G. Morgan, Assistant United States Attorney, 600 East Harrison, No. 201, Brownsville, TX 78520, by ☒ certified mail, return receipt requested, and/or by ☐ facsimile, and/or by ☐ hand delivery, on this _18th_ day of January, 2001.

_____
DENNIS SANCHEZ

# AFFIDAVIT

STATE OF TEXAS      )
                                )

COUNTY OF CAMERON  )

        BEFORE ME, the undersigned authority, on this day personally appeared ILDEFONSA

DE LA LLATA DE GARCIA, who after being by me duly sworn on oath stated and said the

following:

1.      My name is ILDEFONSA DE LA LLATA DE GARCIA.  My date of birth is January 23, 1933.  I was born in Mexico, and at all times relevant to the purchase of the lots specifically described below, I was residing at Rio San Juan #7, Col. San Francisco, Matamoros, Tamaulipas, Mexico.

2.      I was married in 1959 to Hector Garcia.  He owned and operated Aries Trading Company, which was a small business which sold electrical supplies.  My husband died on October 26, 1978, and he left a life insurance policy which paid me approximately $350,000.00 pesos.

3.      During the time of our marriage, I did not work outside the house.  However, after my husband's death, I needed additional income.  I therefore began to work as a secretary with a customs broker, Ajencia Aduanal Oscar Perez, in Matamoros, Tamaulipas, Mexico.  I worked in that capacity from approximately 1980 to 1989. I was earning approximately $500.00 pesos per month.  Because the exchange rate was changing so often, I cannot tell you in dollars how much that represented.

4.      My husband and I had five children.  During this period of time that I was working, my five children were living, at various times, in the house with me in Matamoros, Tamaulipas, Mexico.  My children also worked, and they brought their earnings to the house in order to help us live comfortably.

5.      In about 1987 or 1988, my son, Ricardo, suggested that I purchase two lots which were available for sale in Matamoros.  I purchased one lot from Maria Luisa Garza Olguin, and one lot from Dr. Eluid Rogelio Cavazos Gonzalez.  Previously, my son had purchased, in about 1985, two lots, and when he finished paying for such lots, he later put them into my name in about 1988.

6.      The two lots which I purchased were paid for by payments which I was making for the lots.  The payments came from my son-in-law, Nazario Ruiz, who owns a

---



EXHIBIT

_A_

ALL-STATE LEGAL SUPPLY CO.

trucking company in Mexico, would provide me with monthly checks which represented the income from one of the trucks  With the money that I received, I was able to complete purchasing the lots and buying supplies for the construction of one house on the lots.

7.    I considered these monies which I received as gifts from my children.

8.    In 1998, I had the opportunity to sell the lots, and I sold the lots for a total of $80,000.00.  Since my son Ricardo had been so instrumental in my decision to purchase the two lots and in giving me the other two lots, I wanted to help him get established with a home in Brownsville.  I therefore gave him and his wife, Eva Garcia, the amount of $80,000, which I knew they were going to be utilizing to buy a lot and build a house.  I did not consider this as a loan, because I knew that my son, like my other children, would always take care of me.

9.    When I received the money from the sale of the lots in 1998, I gave the money to my son and daughter-in-law, Ricardo and Eva Garcia.  I understand that they deposited the money into Inverlat Bank in Matamoros, Mexico.

FURTHER AFFIANT SAITH NOT.

*Ildefonsa De la Llata Vda. de Garcia*
ILDEFONSA DE LA LLATA DE GARCIA

SWORN TO AND SUBSCRIBED TO BEFORE ME, a Notary Public, on the 20th day of December, 2000.

Notary Public, State of Texas

My Commission Expires:

MARGARITA ALVAREZ
Notary Public, State of Texas
My Commission Expires 08-17-01

# AFFIDAVIT

STATE OF TEXAS      )
                            )
COUNTY OF CAMERON   )

       BEFORE ME, the undersigned authority, on this day personally appeared EVA

GARCIA, who after being by me duly sworn, on oath, stated and said the following:

1.      My name is EVA GARCIA. I live at 5587 Mystic Bend, Brownsville, Cameron County, Texas. I am married to Ricardo Eloy Garcia, and we have two children, Alix Yvanna Garcia and Ricardo Eloy Garcia, Jr.

2.      My husband and I were married on September 2, 1988. We initially lived in Matamoros, Mexico and subsequently moved to the United States.

3.      My mother-in-law is Ildefonsa De La Llata De Garcia. She was the owner of four lots in Matamoros, Mexico, which she acquired in 1988. On or about January 8, 1998, my mother-in-law contracted to sell the lots which she owned in Matamoros, Mexico to Mr. Javier Salinas Hinojosa for a sales price of $80,000.00. Attached hereto as Exhibit A is a Spanish language copy of the sales agreement existing by and between my mother-in-law and Javier Salinas Hinojosa.

4.      In March 1998, my mother-in-law indicated to my husband and me that she had received payment for the property which she had sold and wanted to make a gift to us in order to allow us to buy property and build a house in Brownsville, Texas. In March 1998, and specifically on or about March 9, 1998, my mother-in-law provided to me and my husband the amount of $78,600.00 which was deposited into an account at Banco Inverlat, S.A. in Matamoros, Tamaulipas, Mexico. The bank account was in the name of my husband and myself. The next day on March 10, 1998, my mother-in-law gave us another amount of $1,400.00 which we deposited into the same Banco Inverlat account. Attached hereto as Exhibit B and incorporated herein for all purposes, is a copy of the bank statement showing the two deposits made into the account. We then transferred approximately $35,000.00 from the Banco Inverlat account to our account at International Bank of Commerce

5.      With the money in our account, my husband and I then purchased Lot 20, Block 7, The Woods Subdivision, Cameron County, Texas on August 28, 1998. The purchase price was $25,000. A true and correct copy of the Settlement Closing

Statement and the Warranty Deed are attached hereto as Exhibits C and D, respectively.

6.   On September 29, 1998, my husband and I contracted with Juan Antonio Chapa, d/b/a Heavenly Homes, to have a house built on the Lot which we had purchased. The contract price for the house was $78,050.19. Of that amount, my husband and I made an application with International Bank of Commerce to borrow the construction monies necessary to construct the house. International Bank of Commerce loaned us the amount of $76,500.00. Attached hereto as Exhibits E and F, respectfully, are the Bank Settlement Closing Statement and the Real Estate Lien Note reflecting the amount of money which we borrowed from International Bank of Commerce.

7.   It is obvious from events which have occurred that my husband pleaded guilty of participating in illegal activity involving drugs. However, the monies utilized to purchase the Lot and the house were not derived from my husband's activities in the drug smuggling operation alleged by the Government in its indictment against my husband or its Motion for Summary Judgment. The money utilized to purchase the Lot and the house came as a gift from my mother-in-law, and her receipt of the monies was derived from the sale of the lots which she acquired in 1988 - more than ten (10) years prior to the illegal activities complained of by the Government.

FURTHER AFFIANT SAITH NOT.

_Eva Garcia_
EVA GARCIA

SWORN TO AND SUBSCRIBED TO BEFORE ME, a Notary Public, by the said EVA GARCIA, to certify which witness my hand and seal of office this _18_ day of January, 2001.

_Christina Logan_
Notary Public, State of Texas

My Commission Expires:

Christina Logan
MY COMMISSION EXPIRES
June 14, 2001

$ 40,000.00 DLLS. -----

RECIBÍ, del señor JAVIER SALINAS HINOJOSA,

la cantidad de $ 40,000.00 dlls (Cuarenta mil dólares mone

da extranjera), a CUENTA de la operación de COMPRA-VENTA

que tenemos concertada respecto a los lotes 6 y 7, manzana

15, del Fraccionamiento Urbano "Residencial Las Arboledas"-

de esta ciudad, con una superficie de 240.00 M.2. (doscien-

tos cuarenta metros cuadrados) y construcción sobre el mis-

mo edificada, el cual se identifica con las siguientes medi-

das y colindancias: --------------------------------

AL NORTE:- en 16.00 Mts., con lote número 8. ------------

AL SUR:- en 16.00 Mts., con lote número 4. -------------

AL ORIENTE:- en 15.00 Mts., con la calle Samuel Morse; y: -

AL PONIENTE:- en 15.00 Mts., con lotes 18 y 19, de la Manza

na número 15. --------------------------------------

Así como los lotes marcados con los núme-

ros 8 y 9, de la Manzana 15, del Fraccionamiento Urbano "Re

sidencial Las Arboledas" de esta ciudad, con una superficie

de 240.00 M.2. (doscientos cuarenta metros cuadrados) y -

construcción sobre el mismo edificada, el cual se identifi-

ca con las siguientes medidas y colindancias: ----------

AL NORTE:- en 16.00 Mts., con lote número 10. -----------

AL SUR:- en 16.00 Mts., con lote número 7. -------------

AL ORIENTE:- en 15.00 Mts., con la calle Samuel Morse; y: -

En la inteligencia que la Escritu-
ra de VENTA definitiva, la otorgaré en favor del mencionado
señor JAVIER SALINAS HINOJOSA, o de la persona que este de-
signe cuando me sea cubierta la cantidad de $ 40,000.00 Dlls.
(cuarenta mil dólares en moneda extranjera), misma que
no exceder de 30 (treinta) días a partir de esta fecha, que
15, del Fraccionamiento Urbano "Las Arboledas."
se construirá con una superficie de 240.00 M.2. (doscien-
tos cuarenta metros cuadrados) y construcción sobre el mis-
mo edificada al se identificación los siguientes medi-
as y colindancias: --------------------------------------

AL NORTE:- en 16.00 Mts., con lotes 8 y 9, --------------
ILDEFONSA DE LA LLATA CASANO        SR. JAVIER SALINAS HINOJOSA
VA VDA. DE GARCIA.        con lote ------
AL SUR:- en 16.00 Mts., con lote ----------------
AL ORIENTE:- en 15.00 Mts., con la calle Samuel Morne; y.-
AL PONIENTE:- en 15.00 Mts., con lotes 1b y 19, de la Manza-
na número 15. ------------------------------

MAGDALENA CORONADO DE LA GARZA        ANA MARIA CORONADO TENIENTE
tes 8 y 9, de la Manzana 15, del Fraccionamiento Urbano "los

--- En la Heróica ciudad de Matamoros, Estado de Tamaulipas
a los ocho días del mes de enero de mil novecientos noventa
y ocho, YO, LICENCIADO ROMUALDO PEREZ GARCIA, NOTARIO PUBLI
CO NUMERO CIENTO SESENTA Y SEIS, en ejercicio en esta ciu-
dad, CERTIFICO: -----------------------------------------
--- Que hoy comparecieron ante mí ILDEFONSA DE LA LLATA CA-
SANOVA VDA. DE GARCIA y JAVIER SALINAS HINOJOSA, acompaña-
dos de las testigos MAGDALENA CORONADO DE LA GARZA y ANA MA
RIA CORONADO TENIENTE, quienes manifestaron que las firmas-
que anteceden las reconocen como suyas por ser de su puño y
letra, ratificándolas en mi presencia para los efectos lega-
les a que haya lugar. ----------------------------------
--- SRA. ILDEFONSA DE LA LLATA CASANOVA VDA. DE GARCIA, del
personal conocimiento del suscrito...

Case 1:00-cv-00147   Document 17   Filed in TXSD on 01/18/2001   Page 10 of 21

ESTADO DE CUENTA 7   155   600465-2   CHEQUES   4   FOLIO   114875 HOJA   1 DE 1   155

G 07

BANCO INVERLAT, S.A.                                          CU NEUELI ARCKD                    CORTE AL 31-MAR-98
ALVARO OBREGON Y GLADIOLAS NO. 48                            MONEDA: DOLARES
JARDIN                                                       PLAZA:  MATAMOROS, TAMPS.          BANCA:  COMERCIAL
87330 MATAMOROS TAMP                                         SUCURSAL: JARDIN                   RFC:    BEFE641024

FUENTES EVA BENAVIDES
RICARDO ELOY GARCIA DE LA LLATA                  ".. 30 DE ABRIL, ULTIMO DIA PARA  QUE LAS PERSONAS FISICAS PRESENTEN
SANDALO NO. 78                                   SU DECLARACION ANUAL.."
FRACC. ARBOLEDAS
87444 MATAMOROS              CR: 87351            PARA SPEUA Y PAGO INTERBANCARIO SU PLAZA ES: 155 Y SU CUENTA ES:   600465E

RESUMEN DE SALDOS:      SALDO PROMEDIO   SALDO ANTERIOR   + DEPOSITOS   + INTERESES   -   RETIROS   =   SALDO ACTUAL
DEPOSITOS A LA VISTA    MES ANTERIOR

                        0.00                     80,191.36                                32.53                80,158.83

DETALLE DE SUS MOVIMIENTOS:
FECHA   ORIGEN          REFERENCIA               CONCEPTO                 DEPOSITOS              RETIROS           SALDO

09-MAR  8002 MJ53       1550078266   DEPOSITO EN FIRME                    78,600.00                               78,600.00
10-MAR  912091          1  DEPOSITO EN FIRME                              1,400.00                                80,000.00
31-MAR  999999             RETENCION DE ISR POR RENDIMIENTOS
                        1.70%    RETENCION EN FIRME                                              32.53            80,000.00
                        3.750%   RENDIMIENTOS                             191.36                 32.53            80,158.83


EXHIBIT
B

# A. SETTLEMENT STATEMENT

U.S. Department of Housing and Urban Development

OMB No. 2502-0265

## B. Type of Loan

| | | | | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins. | | 9855225B      AP | | |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | | |

C. NOTE:   *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.*
*Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

**D. NAME OF BORROWER:**   RICARDO ELOY GARCIA ETUX EVA GARCIA
ADDRESS OF BORROWER: 1405 OLD PORT ISABEL RD#10, BROWNSVILLE, TEXAS 78520

**E NAME OF SELLER:**   GLOOR DEVELOPMENT CORPORATION
ADDRESS OF SELLER:   P.O. BOX 3250, BROWNSVILLE, TEXAS 78520                     SSN:

**F. NAME OF LENDER:**
ADDRESS OF LENDER:

**G. PROPERTY LOCATION:**   LOT 20, BLK 7, THE WOODS SUBDIVISION, BROWNSVILLE, TEXAS 78520

**H. SETTLEMENT AGENT:**   Southern Texas Title Company
PLACE OF SETTLEMENT: 717 NORTH EXPRESSWAY, BROWNSVILLE, TEXAS 78520          TIN:

**I SETTLEMENT DATE:**   August 28, 1998

| J.        SUMMARY OF BORROWER'S TRANSACTION | | K.        SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sale price | 25,000.00 | 401. Contract sale price | 25,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: | | 403. | |
| *(from line 1400)* | 113.00 | 404. | |
| 104 | | 404. | |
| 105. | | 405. | |
| ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | |
| 106. City Taxes           to | | 406. City Taxes              to | |
| 107. County Taxes        to | | 407. County Taxes           to | |
| 108. Assessments         to | | 408. Assessments            to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:   >>** | 25,113.00 | **420. GROSS AMOUNT DUE TO SELLER:   >>** | 25,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 25,000.00 | 501. Excess deposit *(see Instructions)* | 25,000.00 |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller *(line 1400)* | 517.13 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | |
| 210. City Taxes           to | | 510. City Taxes              to | |
| 211. County Taxes   01/01  to 08/28/98 | 9.51 | 511. County Taxes   01/01  to 08/28/98 | 9.51 |
| 212. Assessments         to | | 512. Assessments            to | |
| 213. SCHOOL          01/01 to 08/28/98 | 20.12 | 513. SCHOOL          01/01 to 08/28/98 | 20.12 |
| 214 | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY\FOR** | | **520. TOTAL REDUCTIONS** | |

| HUD-1 (Rev. 3\86) | | | | OMB No. 2502-0265 |
|---|---|---|---|---|

## L. SETTLEMENT CHARGES

| | | | PAID FROM BORROWER'S FUNDS SETTLEMENT | PAID FROM SELLER'S FUNDS SETTLEMENT |
|---|---|---|---|---|
| 700. | TOTAL SALES\BROKER'S COMMISSION: BASED ON PRICE    $         @        %= | | | |
| **DIVISION OF COMMISSION (LINE 700) AS FOLLOWS:** | | | | |
| 701. | $                                     to | | | |
| 702. | $                                     to | | | |
| 703. | Commission paid at settlement | | | |
| 704. | NO REALTORS COMMISSION TO BE PAID AT CLOSING | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | POC | | |
| 801. | Loan origination fee                       % | | | |
| 802. | Loan discount                              % | | | |
| 803. | Appraisal fee to: | | | |
| 804. | Credit report to: | | | |
| 805. | Lender's inspection fee | | | |
| 806. | Mortgage insurance application fee to | | | |
| 807. | Assumption fee | | | |
| 808. | | | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | | | |
| 901. | Interest from                to              @ $           \day | | | |
| 902. | Mortgage insurance premium for            mos. to | | | |
| 903. | Hazard insurance premium for              yrs. to | | | |
| 904. | Flood Insurance Premium for               yrs. to | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | | | |
| 1001. | Hazard Insurance              months @ $           per month | | | |
| 1002. | Mortgage Insurance            months @ $           per month | | | |
| 1003. | City Property Taxes           months @ $           per month | | | |
| 1004. | County Property Taxes         months @ $           per month | | | |
| 1005. | Annual Assessments            months @ $           per month | | | |
| 1006. | Flood Insurance               months @ $           per month | | | |
| 1007. | | months @ $                  per month | | | |
| 1008. | | months @ $                  per month | | | |
| **1100. TITLE CHARGES:** | | | | |
| 1101. | Settlement or closing fee to | | | |
| 1102. | Abstract or title search to | | | |
| 1103. | Title examination to | | | |
| 1104. | Title insurance binder to | | | |
| 1105. | Document preparation to      EARL V. TYLER | | | 60.00 |
| 1106. | Notary fees to | | | |
| 1107. | Attorney's fees to | | | |
| | (includes above items Numbers:                          ) | | | |
| 1108. | Title insurance to           Southern Texas Title Company | | | 390.00 |
| | (includes endorsements:                                ) | | | |
| 1109. | Lender's coverage      $ | | | |
| 1110. | Owner's coverage       $    25,000.00 (390.00) | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | | | |
| 1201. | Recording fees: Deed $  13.00    : Mortgage $           : Releases $   13.00 | | 13.00 | 13.00 |
| 1202. | City\county tax \ stamps: Deed $           : Mortgage $ | | | |
| 1203. | State tax\stamps          Deed $           : Mortgage $ | | | |
| 1204. | | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES:** | | | | |
| 1301. | Survey to   NO SURVEY IS REQUIRED AT CLOSING BY PURCHASER | | | |
| 1302. | Pest Inspection to | | | |
| 1303. | ESCROW FEE               Southern Texas Title Company | | 100.00 | |
| 1304. | TAX SERVICE FEE          BROWNSVILLE GROUP SERVICE | | | 54.13 |
| 1305. | | | | |

# WARRANTY DEED

**Date:** August 28, 1998

**Grantor:**   GLOOR DEVELOPMENT CORPORATION

**Grantor's Mailing Address (including county):**

> P.O. Box 3250
> Brownsville, Texas  78523  (Cameron County)

**Grantee:**   RICARDO ELOY GARCIA and EVA GARCIA

**Grantee's Mailing Address (including County):**

> 1405 Old Port Isabel Rd. #10
> Brownsville, Texas  78520  (Cameron County)

**Consideration:**   TEN AND NO/100 DOLLARS and other good and valuable consideration

**Property (including any improvements):**

> Lot Twenty (20), Block Seven (7), **THE WOODS SUBDIVISION**, Cameron
> County, Texas, according to the Map thereof recorded in Cabinet 1, Slot 1428-A &
> 1428-B, Map Records of Cameron County, Texas.

**Reservations From and Exceptions to Conveyance and Warranty:**

Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor's successors and assigns are hereby bound to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural

GLOOR DEVELOPMENT CORPORATION

BY: _____

Printed Name: Leslie Gloor

Title: Vice President

# REAL ESTATE LIEN NOTE

Amount $ ___76,500.00___  Date ___September 29, 1998___

For value received, the receipt of which is hereby acknowledged, the undersigned, jointly and severally, (hereinafter, "Borrower", whether one or more) promise to pay to the order of INTERNATIONAL BANK OF COMMERCE (hereinafter, "Lender"), at 630 E Elizabeth Brownsville, Cameron County, Texas, the sum of SEVENTY SIX THOUSAND FIVE HUNDRED AND NO/100------------------------------------------------------------------------

Dollars ($ ___76,500.00___ ), in legal and lawful money of the United States of America, with interest as it accrues on the outstanding principal balance from date of advance of such principal until paid.

___X___ The interest rate shall be 12.50% percent per annum; or
_____ The interest rate shall be floating at _____ percent per annum above the _____

("Prime Rate") (described below) as it fluctuates from time to time; provided, however, that in no event shall the rate of interest (plus said amount in excess thereof, if any) to be paid on the unpaid principal of this Note be less than eight and one half percent (8½%) per annum, nor more than the maximum legal rate allowed by applicable law  The starting interest rate on this Note shall be _____ percent per annum.  The rate of interest due hereof shall be recomputed as of the date of any change in the Prime Rate.

_____ The INTERNATIONAL BANK OF COMMERCE PRIME RATE shall mean the annual lending rate of interest announced from time to time by International Bank of Commerce, Laredo, Laredo, Texas, a State Chartered Banking Association, as its prime rate
_____ The INTERNATIONAL BANK OF COMMERCE, BROWNSVILLE PRIME RATE shall mean the annual lending rate of interest announced from time to time by International Bank of Commerce, Brownsville, Brownsville, Texas, a Texas State Chartered Banking Association, as its prime rate.
_____ The NEW YORK PRIME RATE shall mean the annual lending rate of interest announced from time to time by the Chase Manhattan Bank, N.A., New York, New York, as its prime rate. If the New York Prime Rate has been selected as the Prime Rate and if, thereafter, a prime rate is not announced by Chase Manhattan Bank, N.A., then the International Bank of Commerce Prime Rate, minus one percent (1%) shall be the Prime Rate.

Use of any of said Prime Rates is not to be construed as a warranty or representation that such rates are more favorable than another rate or index, that rates on other loans or credit facilities may not be based on other indices or that rates on loans to others may not be made below such prime rate

The interest is calculated on a 360-day factor applied on a 365-day year, in the event that the year is a leap year, on the unpaid principal to the date of each installment paid and the payment made credited first to the discharge of the interest accrued and the balance to the reduction of the principal.  Provided, however, that in the event the interest rate reaches the maximum rate allowed by applicable law, said maximum legal rate shall be computed on a full calendar year 365/365 days basis or on a 366/366 days basis, in the event that the year is a leap year  The interest charged and herein contracted for will not exceed the maximum allowed by law

Matured unpaid amounts will bear interest computed on a full calendar year 365/365 days basis or on a 366/366 days basis, in the event that the year is a leap year, at the highest legal rate of interest allowed by Texas Law, unless Federal Law allows a higher interest rate, in which case, Borrower agrees to pay the rate allowed by Federal Law.  If applicable law does not set a maximum rate of interest for matured unpaid amounts, then Borrower agrees that the maximum rate for such amounts shall be eighteen percent (18%) per annum

The outstanding and unpaid principal of this Note and all accrued and unpaid interest are payable as follows.

| Number of Payments | Frequency | Amount of Payments | When Payments are Due |
|---|---|---|---|
| 1 | Single | Principal plus accrued interest | due on or before six (6) months from date hereof. |
| | | | |
| | | | |

Final Maturity Date ___March 29, 1999___

Lender may, at its discretion, adjust the amount of periodic payments described above to assure that _____ ll fully amortize the principal of this Note on the stated maturity without any "Balloon" or unequal payment

THIS OBLIGATION HAS THE FOLLOWING DEMAND FEATURE:

At any time, and from time to time, whether or not prior to and/or during said schedule payment dates, Lender may, in its sole and absolute discretion, reschedule, rearrange and/or accelerate, in whole or in part, the outstanding and unpaid principal balance, and all accrued and unpaid interest under this Note.  Borrower agrees and promises to pay Lender all accelerated principal and all accrued and unpaid interest on _____ principal  No notice of intent to accelerate shall be required of Lender and Borrower expressly waives any right to notice of Lender's

EXHIBIT

(m)  THE PARTIES ACKNOWLEDGE THAT THIS NOTE EVIDENCES A TRANSACTION INVOLVING INTERSTATE COMMERCE IN THAT LOAN FUNDS PROVIDED UNDER THIS NOTE ARE DERIVED FROM INTERSTATE AND/OR INTERNATIONAL FINANCIAL MARKETS.  THE FEDERAL ARBITRATION ACT SHALL GOVERN THE INTERPRETATION, ENFORCEMENT, AND PROCEEDINGS PURSUANT TO THE ARBITRATION CLAUSE IN THIS NOTE.

(n)  THE ARBITRATORS, OR A MAJORITY OF THEM, SHALL AWARD ATTORNEY'S FEES AND COSTS TO THE PREVAILING PARTY PURSUANT TO THE TERMS OF THIS AGREEMENT.

(o)   VENUE OF ANY ARBITRATION PROCEEDING HEREUNDER WILL BE IN CAMERON COUNTY, TEXAS.

THE TERM LENDER INCLUDES ANY OTHER OWNER AND HOLDER OF THIS NOTE AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS  THIS NOTE IS GOVERNED BY APPLICABLE TEXAS LAW, EXCEPT TO THE EXTENT THE USURY LAWS OF TEXAS ARE PRE-EMPTED BY FEDERAL LAW, IN WHICH CASE, SUCH FEDERAL LAW SHALL APPLY   VENUE OF ALL ACTIONS ON THIS NOTE, SHALL LIE IN CAMERON COUNTY, TEXAS, AND ALL OBLIGATIONS REQUIRED HEREIN ARE PERFORMABLE IN CAMERON COUNTY, TEXAS

If loan proceeds are to be used primarily for personal, family or household use, the following notice shall apply

NOTICE TO CONSUMERS:  UNDER TEXAS LAW IF YOU CONSENT TO THIS AGREEMENT YOU MAY BE SUBJECT TO A FUTURE RATE AS HIGH AS 24% ANNUAL PERCENTAGE RATE, OR THE STATE USURY CEILING, WHICHEVER IS LESS

If this Note is to be secured by a lien on a dwelling located on the hereinafter described property, then the following notice shall THE MAXIMUM INTEREST RATE SHALL NOT EXCEED TWENTY-FOUR PERCENT (24%) PER ANNUM, OR THE USURY CEILING, WHICHEVER IS LESS

Mechanic's Lien Contract of even date herewith

Payment hereof is secured by a ~~Vendor's lien retained in Deed of even date herewith the Borrower and a~~ WITH ~~Deed of Trust Security Agreement Financing Statement of even date herewith~~ executed by the Borrower and/or Grantors thereof to _____ FRED W. RUSTEBERG _____, Trustee, upon the following described real property _____

Lot Twenty (20), Block Seven (7), THE WOODS SUBDIVISION, Cameron County, Texas, according to the Map thereof recorded in Cabinet 1, Slot 1428-A and 1428-B, Map Records of Cameron County, Texas.

## NO ORAL AGREEMENTS

THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENT OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

"Borrower"                                           "Borrower"

_____              _____
RICARDO ELOY GARCIA                        EVA GARCIA
"Borrower"                                           "Borrower"

_____              _____

**A. SETTLEMENT STATEMENT**      U.S. Department of Housing and Urban Development     OMB No 2502-0265

**B Type of Loan**

| 1 ☐ FHA | 2 ☐ FmHA | 3 ☒ Conv Unins | 6 File Number | 7 Loan Number | 8 Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4 ☐ VA | 5 ☐ Conv. Ins. | | 9855635B    AR | | |

**C. NOTE**    This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown
*Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals*

**D. NAME OF BORROWER:**  RICARDO ELOY GARCIA AND WIFE, EVA GARCIA
ADDRESS OF BORROWER: 1405 OLD ISABEL ROAD APT.10, BROWNSVILLE, TEXAS 78520

**E. NAME OF SELLER:**
ADDRESS OF SELLER.

**F. NAME OF LENDER:**  INTERNATIONAL BANK OF COMMERCE
ADDRESS OF LENDER: 630 ELIZABETH, BROWNSVILLE, TEXAS 78520

**G PROPERTY LOCATION:**  LOT 20, BLOCK 7, THE WOODS SUBDIVISION, CAMERON COUNTY, , TEXAS

**H SETTLEMENT AGENT:**  Southern Texas Title Company
PLACE OF SETTLEMENT: 717 NORTH EXPRESSWAY, BROWNSVILLE, TEXAS 78520     TIN:

**I SETTLEMENT DATE:**  September 29, 1998

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101 Contract sale price | | 401. Contract sale price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: | | 403. | |
| *(from line 1400)* | 78,050.19 | 404. | |
| 104 | | 405. | |
| 105. | | | |
| ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | |
| 106. City Taxes   to | | 406. City Taxes   to | |
| 107. County Taxes   to | | 407. County Taxes   to | |
| 108. Assessments   to | | 408. Assessments   to | |
| 109 | | 409. | |
| 110 | | 410. | |
| 111 | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER: >>** | **78,050.19** | **420. GROSS AMOUNT DUE TO SELLER: >>** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201 Deposit or earnest money | | 501. Excess deposit *(see instructions)* | |
| 202. Principal amount of new loan(s) | 76,500.00 | 502. Settlement charges to seller *(line 1400)* | |
| 203 Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204 | | 504. Payoff of first mortgage loan | |
| 205 | | 505. | |
| 206 | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209 | | 509. | |
| ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | |
| 210 City Taxes   to | | 510. City Taxes   to | |
| 211. County Taxes   to | | 511. County Taxes   to | |
| 212 Assessments   to | | 512. Assessments   to | |
| 213. | | 513. | |
| 214 | | 514. | |
| 215 | | 515. | |
| 216 | | 516. | |
| 217 | | 517. | |
| 218 | | 518. | |

EXHIBIT

HUD-1 (Rev. 3\86)                                                                                          OMB No. 2502-0265

## L.                                    SETTLEMENT CHARGES

| | | | PAID FROM BORROWER'S FUNDS SETTLEMENT | PAID FROM SELLER'S FUNDS SETTLEMENT |
|---|---|---|---|---|
| **700.** | **TOTAL SALES\BROKER'S COMMISSION:** | | | |
| | BASED ON PRICE      $           @           % = | | | |
| **DIVISION OF COMMISSION (LINE 700) AS FOLLOWS:** | | | | |
| 701. | $                              to | | | |
| 702. | $                              to | | | |
| 703. | Commission paid at settlement | | | |
| 704. | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | POC | | |
| 801. | Loan origination fee          %   INTERNATIONAL BANK OF COMMERCE | | 765.00 | |
| 802. | Loan discount                 % | | | |
| 803. | Appraisal fee to: | | | |
| 804. | Credit report to: | | | |
| 805. | Lender's inspection fee | | | |
| 806. | Mortgage insurance application fee to | | | |
| 807. | Assumption fee | | | |
| 808. | DRAWS FROM BUILDERS/BORROWER    INTERNATIONAL BANK OF COMMERCE | | 76,500.00 | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | | | |
| 901. | Interest from             to           @ $           \day | | | |
| 902. | Mortgage insurance premium for      mos. to | | | |
| 903. | Hazard Insurance premium for        yrs. to | | | |
| 904. | Flood Insurance Premium for         yrs. to | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | | | |
| 1001. | Hazard Insurance          months @ $        per month | | | |
| 1002. | Mortgage Insurance        months @ $        per month | | | |
| 1003. | City Property Taxes       months @ $        per month | | | |
| 1004. | County Property Taxes     months @ $        per month | | | |
| 1005. | Annual Assessments        months @ $        per month | | | |
| 1006. | Flood Insurance           months @ $        per month | | | |
| 1007. | months @ $        per month | | | |
| 1008. | months @ $        per month | | | |
| **1100. TITLE CHARGES:** | | | | |
| 1101. | Settlement or closing fee to | | | |
| 1102. | Abstract or title search to | | | |
| 1103. | Title examination to | | | |
| 1104. | Title insurance binder to | | | |
| 1105. | Document preparation to   MICHELE SANCHEZ, P.C. | | 300.00 | |
| 1106. | Notary fees to | | | |
| 1107 | Attorney's fees to | | | |
| | (includes above items Numbers:                            ) | | | |
| 1108. | Title insurance to      Southern Texas Title Company | | 270.00 | |
| | (Includes endorsements:                            ) | | | |
| 1109 | Lender's coverage    $  76,500.00 (270.00) | | | |
| 1110 | Owner's coverage     $ | | | |
| 1111 | | | | |
| 1112 | | | | |
| 1113 | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | | | |
| 1201. | Recording fees: Deed $         : Mortgage $         : Releases $ | | | |
| 1202. | City\county tax \ stamps: Deed $           : Mortgage $ | | | |
| 1203. | State tax\stamps      Deed $           : Mortgage $ | | | |
| 1204. | MECH./TRANSFER | | 34.00 | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES:** | | | | |
| 1301. | Survey to | | | |
| 1302. | Pest inspection to | | | |
| 1303. | ESCROW FEE               Southern Texas Title Company | | 100.00 | |
| 1304. | TAX SERVICE             BROWNSVILLE GROUP SERVICE | | 54.13 | |

# REAL ESTATE LIEN NOTE

Amount $ ___76,500.00___                    Date _____September 29 , 1998_____

For value received, the receipt of which is hereby acknowledged, the undersigned, jointly and severally, (hereinafter, "Borrower", whether one or more) promise to pay to the order of INTERNATIONAL BANK OF COMMERCE (hereinafter, "Lender"), at 630 E  Elizabeth Brownsville, Cameron County, Texas, the sum of SEVENTY SIX THOUSAND FIVE HUNDRED AND NO/100---------------- --------------------------------------------------------------------------------- Dollars ($ ___76,500.00___ ), in legal and lawful money of the United States of America, with interest as it accrues on the outstanding principal balance from date of advance of such principal until paid.

___X___ The interest rate shall be 12.50% percent per annum; or

_____ The interest rate shall be floating at _____ percent per annum above the _____

_____ ("Prime Rate") (described below) as it fluctuates from time to time; provided, however, that in no event shall the rate of interest (plus said amount in excess thereof, if any) to be paid on the unpaid principal of this Note be less than eight and one half percent (8½%) per annum, nor more than the maximum legal rate allowed by applicable law.  The starting interest rate on this Note shall be _____ percent per annum.  The rate of interest due hereof shall be recomputed as of the date of any change in the Prime Rate.

_____ The INTERNATIONAL BANK OF COMMERCE PRIME RATE shall mean the annual lending rate of interest announced from time to time by International Bank of Commerce, Laredo, Laredo, Texas, a State Chartered Banking Association, as its prime rate

_____ The INTERNATIONAL BANK OF COMMERCE, BROWNSVILLE PRIME RATE shall mean the annual lending rate of interest announced from time to time by International Bank of Commerce, Brownsville, Brownsville, Texas, a Texas State Chartered Banking Association, as its prime rate.

_____ The NEW YORK PRIME RATE shall mean the annual lending rate of interest announced from time to time by the Chase Manhattan Bank, N A., New York, New York, as its prime rate. If the New York Prime Rate has been selected as the Prime Rate and if, thereafter, a prime rate is not announced by Chase Manhattan Bank, N.A., then the International Bank of Commerce Prime Rate, minus one percent (1%) shall be the Prime Rate.

Use of any of said Prime Rates is not to be construed as a warranty or representation that such rates are more favorable than another rate or index, that rates on other loans or credit facilities may not be based on other indices or that rates on loans to others may not be made below such prime rate

The interest is calculated on a 360-day factor applied on a 365-day year, in the event that the year is a leap year, on the unpaid principal to the date of each installment paid and the payment made credited first to the discharge of the interest accrued and the balance to the reduction of the principal  Provided, however, that in the event the interest rate reaches the maximum rate allowed by applicable law, said maximum legal rate shall be computed on a full calendar year 365/365 days basis or on a 366/366 days basis, in the event that the year is a leap year  The interest charged and herein contracted for will not exceed the maximum allowed by law

Matured unpaid amounts will bear interest computed on a full calendar year 365/365 days basis or on a 366/366 days basis, in the event that the year is a leap year, at the highest legal rate of interest allowed by Texas Law, unless Federal Law allows a higher interest rate, in which case, Borrower agrees to pay the rate allowed by Federal Law.  If applicable law does not set a maximum rate of interest for matured unpaid amounts, then Borrower agrees that the maximum rate for such amounts shall be eighteen percent (18%) per annum

The outstanding and unpaid principal of this Note and all accrued and unpaid interest are payable as follows

| Number of Payments | Frequency | Amount of Payments | When Payments are Due |
|---|---|---|---|
| 1 | Single | Principal plus accrued interest | due on or before six (6) months from date hereof. |
| | | | |
| | | | |

Final Maturity Date ___March 29 , 1999___

Lender may, at its discretion, adjust the amount of periodic payments described above to assure that _____ ll fully amortize the principal of this Note on the stated maturity without any "Balloon" or unequal payment

THIS OBLIGATION HAS THE FOLLOWING DEMAND FEATURE:

At any time, and from time to time, whether or not prior to and/or during said schedule payment dates, Lender may, in its sole and absolute discretion, reschedule, rearrange and/or accelerate, in whole or in part, the outstanding and unpaid principal balance, and all accrued and unpaid interest under this Note.  Borrower agrees and promises to pay Lender all accelerated principal and all accrued and unpaid interest on such principal  No notice of intent to accelerate shall be required of Lender and Borrower expressly waives any right to notice of Lender's

**EXHIBIT**

immediately credited by the Lender as a payment of principal hereunder, or if this Note has already been paid, immediately refunded to the Borrower. All compensation which constitutes interest under applicable law in connection with the Loan shall be amortized, prorated, allocated and spread over the full period of time any indebtedness is owing by Borrower, to the greatest extent permissible without exceeding the applicable maximum rate allowed by applicable law in effect from time to time during such period.

In no event shall the provisions of Chapter 15, Article 5069 of the Rev. Stat. of Texas (which regulates certain revolving loan accounts and revolving tri-party accounts) apply to the Loan.

IN THE EVENT ANY ITEM, ITEMS, TERMS OR PROVISIONS CONTAINED IN THIS INSTRUMENT ARE IN CONFLICT WITH THE LAWS OF THE STATE OF TEXAS, OR FEDERAL LAW, THIS INSTRUMENT SHALL BE AFFECTED ONLY AS TO ITS APPLICATION TO SUCH ITEM, ITEMS, TERMS OR PROVISIONS, AND SHALL IN ALL OTHER RESPECTS REMAIN IN FULL FORCE AND EFFECT. IT IS UNDERSTOOD AND AGREED THAT IN NO EVENT AND UPON NO CONTINGENCY SHALL THE BORROWER, OR ANY PARTY LIABLE THEREON, OR THEREFORE, BE REQUIRED TO PAY INTEREST IN EXCESS OF THE RATE ALLOWED BY THE LAWS OF THE STATE OF TEXAS OR FEDERAL LAW, IF SUCH LAW PERMITS A GREATER RATE OF INTEREST. THE INTENTION OF THE PARTIES BEING TO CONFORM STRICTLY TO THE USURY LAWS AS NOW OR HEREINAFTER CONSTRUED BY THE COURTS HAVING JURISDICTION.

THE BORROWER, ENDORSERS, SURETIES, GUARANTORS AND ALL PERSONS TO BECOME LIABLE ON THIS NOTE (THE "OBLIGORS") HEREBY, JOINTLY AND SEVERALLY, WAIVE EXPRESSLY ALL NOTICES OF OVERDUE INSTALLMENT PAYMENTS, AND DEMANDS FOR PAYMENT THEREOF, NOTICES OF INTENTION TO ACCELERATE MATURITY, NOTICES OF ACTUAL ACCELERATION OF MATURITY, PRESENTMENT, DEMAND FOR PAYMENT, NOTICES OF DISHONOR, PROTEST, NOTICES OF PROTEST, AND DILIGENCE IN COLLECTION HEREOF. EACH OBLIGOR CONSENTS THAT THE LENDER OR OTHER HOLDER OF THIS NOTE MAY AT ANY TIME, AND FROM TIME TO TIME, UPON REQUEST OF OR BY AGREEMENT WITH ANY OF THEM, RENEW THIS NOTE AND/OR EXTEND THE DATE OF MATURITY HEREOF OR CHANGE THE TIME OR METHOD OF PAYMENTS WITHOUT NOTICE TO ANY OF THE OTHER OBLIGORS, MAKERS, SURETIES OR ENDORSER, WHO SHALL REMAIN BOUND FOR THE PAYMENT HEREOF. OBLIGORS WAIVE EXPRESSLY THE LATE FILING OR ANY SUIT OR CAUSE OF ACTION HEREON, OR ANY DELAY IN THE HANDLING OF ANY COLLATERAL  OBLIGORS AGREE THAT HOLDER'S ACCEPTANCE OF PARTIAL OR DELINQUENT PAYMENTS OR FAILURE OF HOLDER TO EXERCISE ANY RIGHT OR REMEDY CONTAINED HEREIN OR IN ANY INSTRUMENT GIVEN AS SECURITY FOR THE PAYMENT OF THIS NOTE SHALL NOT BE A WAIVER OF ANY OBLIGATION OF THE OBLIGORS OR CONSTITUTE WAIVER OF ANY PRIOR OR SUBSEQUENT DEFAULT. THE HOLDER MAY REMEDY ANY DEFAULT WITHOUT WAIVING THE DEFAULT REMEDIED AND MAY WAIVE ANY DEFAULT WITHOUT WAIVING ANY OTHER PRIOR OR SUBSEQUENT DEFAULT

As security for this Note, and all other indebtedness which may at any time be owing by Borrower (and any endorsers and/or guarantors hereof) to Lender or other Lender hereof, the Borrower (and any endorsers and/or guarantors hereof), give to Lender or other holder hereof, a security interest, a lien and contractual right of set-off in and to all of the Borrower's (and any endorsers and/or guarantors hereof) money, credits, accounts and/or other property now in, or at any time hereafter coming within, the custody or control of Lender or other holder hereof, or any member Bank or branch Bank of International Bancshares Corporation, whether held in a general or special account or deposit, or for safekeeping or otherwise. Every such security interest and right of set-off may be exercised without demand or notice to Borrower (and any endorsers and/or guarantors hereof). No security interest or right of set-off to enforce such security interest, or by any delay in so doing  Every right of set-off and security interest shall continue in full force and effect until such right of set-off or security interest is specifically waived or released by an instrument in writing executed by Lender. The foregoing is in addition to and not in lieu of any rights of set-off allowed by law

In connection with any transaction between Borrower and Lender at any time in the past, present or future, in the event Borrower, individually or jointly with others, has granted or grants Lender a lien on any real and/or personal property, Borrower agrees that the lien on such real and/or personal property to the extent of Borrower's interest shall also secure the indebtedness of Borrower to Lender evidenced by this Note and all renewals, extensions and modifications hereof.

If this Note, or any part hereof, is not paid according to its terms, is placed in the hands of an attorney for collection, or is collected through Probate, Bankruptcy or other judicial or non-judicial proceedings, whether matured by expiration of time or by the exercise of the option given to the Lender to mature it, the Borrower and all parties now or hereafter personally liable hereon now agree to and shall pay an additional amount equal to a reasonable attorney's fees and associated costs for collection, which in no event shall be less than fifteen percent (15%) of the principal and interest then owing. Said attorney's fees and costs of collection, once liquidated and paid by Lender or otherwise allowed by law, will bear interest at the rate of interest applied to the matured and past-due principal balance of this Note as such rate may change from time to time from date due until repaid.

In the event any legal action or proceeding, by arbitration or otherwise, is commenced in connection with the enforcement of, or any declaration of rights under this Note and/or any instrument or written agreement required or delivered under or pursuant to the terms of this Note, and/or any controversy or claim, whether sounding in contract, tort or statute, legal or equitable, involving in any way the financing or the transaction(s), the subject of this Note, or any other proposed or actual loan or extension of credit, the prevailing party shall be entitled to recover reasonable and necessary attorneys' fees, paralegal costs (including allocated costs for in-house legal services), costs, expenses, expert witness fees and costs, and other necessary disbursements made in connection with any such action or proceeding, in the amount determined by the fact-finder

In the event that the hereinafter described real property is sold, conveyed, or otherwise disposed of without the prior written consent of the Lender, the maturity of this Note may, at the option of the Lender, be accelerated and Lender may immediately demand payment of the then outstanding principal sum together with all accrued and unpaid interest due thereon.

Borrower and Lender hereby expressly acknowledge and agree that in the event of a default under this Note or under any document executed by Borrower in connection with, or to secure the payment of, this Note (1) Lender shall not be required to comply with Subsection 3.05(d) of the Texas Revised Partnership Act and (2) Lender shall not be required to proceed against or exhaust the assets of Borrower before pursuing any remedy directly against one or more of the partners of Borrower or the property of such partners.

## ARBITRATION

THE PARTIES FURTHER AGREE AS FOLLOWS:

(a) ANY AND ALL CONTROVERSIES BETWEEN BORROWER AND LENDER SHALL BE SETTLED BY ARBITRATION, IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES, THEN OBTAINING, OF THE AMERICAN ARBITRATION ASSOCIATION. ANY ARBITRATION HEREUNDER SHALL BE BEFORE AT LEAST THREE ARBITRATORS ASSOCIATED WITH THE AMERICAN ARBITRATION ASSOCIATION AND SELECTED IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION. THE AWARD OF THE ARBITRATORS, OR OF A MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

(b) ARBITRABLE DISPUTES INCLUDE ANY AND ALL CONTROVERSIES OR CLAIMS BETWEEN THE BORROWER AND LENDER, OF WHATSOEVER TYPE OR MANNER, INCLUDING ANY CLAIM BASED ON CONTRACT, TORT, OR STATUTE, AND INCLUDING WITHOUT LIMITATION, THIS NOTE OR ANY OTHER PROPOSED OR ACTUAL LOAN OR EXTENSION OF CREDIT, ANY CLAIM ARISING OUT OF OR RELATING TO ALL PAST, PRESENT AND/OR FUTURE AGREEMENTS INVOLVING THE BORROWER AND LENDER, ANY TRANSACTIONS BETWEEN OR INVOLVING THE BORROWER AND LENDER, AND/OR ANY ASPECT OF THE PAST, PRESENT OR FUTURE RELATIONSHIP OF BORROWER AND LENDER, WHETHER BANKING OR OTHERWISE, SPECIFICALLY INCLUDING ANY ALLEGED TORT COMMITTED BY LENDER.

(c) DEPOSITIONS MAY BE TAKEN AND OTHER DISCOVERY OBTAINED IN ANY ARBITRATION UNDER THIS AGREEMENT. WITHIN THIRTY (30) DAYS OF THE DATE A RESPONSIVE PLEADING IS FILED IN ANY ARBITRATION PROCEEDING HEREUNDER, ALL PARTIES SHALL SERVE ON ALL OTHER PARTIES AN INITIAL DISCLOSURE AS WOULD BE REQUIRED BY RULE 26, FEDERAL RULES OF CIVIL PROCEDURE.

(d) FOR PURPOSES OF THIS PROVISION, "THE PARTIES" MEANS BORROWER AND LENDER, AND EACH OF THEM, AND ALL PERSONS AND ENTITIES SIGNING THIS AGREEMENT OR ANY OF THE OTHER AGREEMENTS, SECURITY INSTRUMENTS, AND/OR GUARANTEES EXECUTED HERETOFORE OR CONTEMPORANEOUSLY WITH AND AS PART OF THE SAME TRANSACTION WITH THIS NOTE. "THE PARTIES" SHALL ALSO INCLUDE INDIVIDUAL OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND/OR REPRESENTATIVES OF ANY PARTY TO THOSE DOCUMENTS, AND SHALL INCLUDE ANY OTHER OWNER AND HOLDER OF THE NOTE.

(e) THE PARTIES SHALL HAVE THE RIGHT TO INVOKE SELF-HELP REMEDIES (SUCH AS SET-OFF, NOTIFICATION OF ACCOUNT DEBTORS, SEIZURE AND/OR FORECLOSURE OF COLLATERAL, AND NON-JUDICIAL SALE OF PERSONAL PROPERTY AND REAL PROPERTY COLLATERAL) BEFORE, DURING OR AFTER ANY ARBITRATION AND/OR TO REQUEST ANCILLARY OR PROVISIONAL JUDICIAL REMEDIES (SUCH AS GARNISHMENT, ATTACHMENT, SPECIFIC PERFORMANCE, RECEIVER, INJUNCTION, OR RESTRAINING ORDER, AND SEQUESTRATION) BEFORE OR AFTER ANY ARBITRATION. THE PARTIES NEED NOT AWAIT THE OUTCOME OF THE ARBITRATION BEFORE USING SELF-HELP REMEDIES. USE OF SELF-HELP OR ANCILLARY AND/OR PROVISIONAL REMEDIES SHALL NOT OPERATE AS A WAIVER OF EITHER PARTY'S RIGHT TO COMPEL ARBITRATION.

(f) THE PARTIES AGREE THAT ANY ACTION REGARDING ANY CONTROVERSY BETWEEN THE PARTIES SHALL EITHER BE BROUGHT BY ARBITRATION, AS DESCRIBED HEREIN, OR BY JUDICIAL PROCEEDINGS, BUT SHALL NOT BE PURSUED SIMULTANEOUSLY IN DIFFERENT OR ALTERNATIVE FORUMS. THIS PROVISION SHALL NOT OPERATE TO LIMIT THE PARTIES FROM PURSUING SELF-HLEP REMEDIES BEFORE, DURING OR AFTER ANY ARBITRATION AS DESCRIBED IN PARAGRAPH (e) ABOVE. A TIMELY WRITTEN NOTICE OF INTENT TO ARBITRATE PURSUANT TO THIS AGREEMENT STAYS AND/OR ABATES ANY AND ALL ACTION IN A TRIAL COURT, SAVE AND EXCEPT A HEARING ON A MOTION TO COMPEL ARBITRATION AND/OR THE ENTRY OF AN ORDER COMPELLING ARBITRATION AND STAYING AND/OR ABATING THE LITIGATION PENDING THE FILING OF THE FINAL AWARD OF THE ARBITRATORS.

(g) ANY AGGRIEVED PARTY SHALL SERVE A WRITTEN NOTICE OF INTENTION TO ARBITRATE TO ANY AND ALL OPPOSING PARTIES WITHIN 360 DAYS AFTER DISPUTE HAS ARISEN. A DISPUTE IS DEFINED TO HAVE ARISEN ONLY UPON RECEIPT OF SERVICE OF JUDICIAL PROCESS OR OF A COMPLAINT IN ARBITRATION. FAILURE TO SERVE A WRITTEN NOTICE OF INTENT TO ARBITRATE WITHIN THE TIME SPECIFIED ABOVE SHALL BE DEEMED A WAIVER OF THE AGGRIEVED PARTY'S RIGHT TO COMPEL ARBITRATION OF SUCH CLAIM. THE ISSUE OF WAIVER PURSUANT TO THIS AGREEMENT IS AN ARBITRABLE DISPUTE.